UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Larry Brown, Sr., | : | Case No. 1:07CV1333 |
| Petitioner | : | Judge Dan Aaron Polster |
| v. | : | Magistrate Judge David S. Perelman |
| Stuart Hudson, Warden, | : | **REPORT AND RECOMMENDED DECISION** |
| Respondent | : | |

In this action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his conviction pursuant to a jury trial of one count of aggravated murder with a firearm specification, upon which he is serving a sentence of twenty years to life incarceration, with an additional three years for the firearm specification; and one count of abuse of a corpse, upon which he was sentenced to six months incarceration, for an aggregate total of 23 1/2 years to life imprisonment.

The petitioner appealed his convictions to the Ohio Fifth District Court of Appeals, alleging the following two assignments of error:

    I. The court's failure to rule on an objection made during trial by Defendant-Appellant prevented him from receiving a fair trial.

    II. The verdict was contrary to law and against the manifest weight

of the evidence.

The facts in petitioner's criminal case were summarized by the state appellate court in pertinent part as follows:

> On November 10, 2004, the Richland County Grand Jury indicted appellant on the aforementioned charges in connection with the death of Linda Singleton. The matter proceeded to a four day jury trial, commencing on April 7, 2005.
>
> The following evidence was adduced at trial. Larry Brown, Jr., appellant's son, testified he lived with appellant and his wife, Angie Brown. Brown, Jr. recalled he met Linda Singleton one day when he and appellant were picking Angie from work at Mansfield Assemblies, where Singleton and Angie were friends, and Singleton, her husband, and two children would socialize with appellant's family. The friendship between the two women subsequently developed into a sexual relationship. When Singleton's husband discovered this relationship, he gave his wife an ultimatum. Singleton and her daughter subsequently moved into appellant's residence.
>
> At first, appellant did not have any problems with the relationship between Singleton and Angie. When Singleton first moved into appellant's home, she, Angie, and appellant all slept in the same bedroom. Brown, Jr. explained the three had a sexual relationship. However, the women kicked appellant out of the room. When appellant learned Angie preferred her relationship with Singleton over her marriage to him, he became angry and hostile towards Singleton.
>
> Singleton and Angie eventually moved out of appellant's house. The two women stayed in various places, but appellant always found them. Edward Brown, appellant's oldest son, recalled Singleton and Angie lived in a tent at one time, and appellant burned it down. Edward stated appellant stalked the women, wanting to know their every move. Chris Wimer, a resident of a motel on Koogle Road where Singleton and Angie also stayed, related instances when appellant would come to the motel, throw beer bottles at the door, leave threatening notes, and make verbal threats to both Singleton and Angie. Angie borrowed money from Larry Ferguson, a friend of hers and appellant, in order to obtain a divorce. When appellant learned of this, he went to the office of Attorney Flippen, with whom Angie had consulted, and threatened

2

the attorney if he helped her with the divorce.

In the fall of 2001, Angie moved back into appellant's house. However, she was unhappy, and planned to reunite with Linda. Angie left appellant a second time around Christmas, 2001, but returned after a short period. The last time anyone saw Singleton alive was between Christmas, 2001, and early January, 2002. Singleton spent Christmas with her family, and made plans with a friend to attend a New Year's party the following weekend. She never attended that party.

Around the time Singleton disappeared, appellant began acting strangely. Brown, Jr. remembered appellant picked him up from his mother's house one morning, and when he (Brown, Jr.) entered the car, appellant told his son he (appellant) had done something he should not have done and he would be going away for a while. Brown, Jr. testified his father was very upset at the time. Later that evening, Brown, Jr. and Edward noticed a large puddle of dark, red liquid in appellant's driveway. When his sons questioned him, appellant told them it was transmission fluid. The next day the boys noticed the puddle had been partially washed away. They came to believe the puddle was blood because it dissolved in the water.

Around this same time, appellant cleaned and sold his car. Appellant thoroughly cleaned the car, removing the trunk liner and spraying out the trunk. He also disposed of the spare tire cover, which appeared to have a spot of blood on it. The spare tire cover was later recovered in the woods near the area where Singleton's body was found. Appellant also disposed of his Hi-Point 9 mm handgun which he kept in a Bible case in his car. Brown, Jr. testified appellant cut the gun into pieces and threw it out of the car window as he was driving down Rock Road.

Appellant made comments which led his sons to believe he had murdered Singleton. Appellant worked as a maintenance man for John Gottfried. While working on Gottfried's property on Stewart Road, appellant asked Brown, Jr. if he could smell anything in the area, which was in proximity to where Singleton's body was ultimately recovered. Appellant also made a comment he became winded and that was why the hole was not deep. Brown, Jr. indicated he thought his father was referring to the hole in which he buried Singleton's body. Although appellant never specifically admitted to Brown, Jr. he killed Singleton, Brown, Jr. testified his father told him he "got rid of his problem."

> Brown, Jr. confided in Edward about the things his father had said. While both boys believed their father had killed Singleton and buried her body on Stewart Road, neither passed this information to the police, who were investigating Singleton's disappearance. Appellant instructed both of his sons not to talk to the police, and threatened to take them down with him if he went down.
>
> Appellant's threats worked until Edward was arrested in September, 2004. Edward worked out a plea agreement with the authorities in exchange for his showing them the location of Singleton's body. Edward took the police to a mound of dirt on Gottfried's Stewart Road property. The police dug in the area, and unearthed Singleton's remains. An autopsy revealed she had been shot in the back of the head. A luger 9 mm bullet was recovered, which was consistent with having been fired from a Hi-Point 9 mm weapon. After Singleton's body was recovered, Brown, Jr. also agreed to tell the police what his father had told him about Singleton's disappearance.
>
> After hearing all the evidence and deliberations, the jury found appellant guilty of one count of aggravated murder with a firearm specification, and one count of abuse of a corpse. Appellant appeared before the trial court for sentencing on April 18, 2005. The trial court sentenced appellant to an aggregate term of incarceration of twenty-three and a half years to life.

On June 23, 2006 the state appellate court affirmed the judgment of conviction and sentence.

On August 7, 2006 petitioner appealed the state appellate court ruling to the Ohio Supreme Court alleging the following two propositions of law:

> **Proposition of Law No. I:** Appellant's conviction must be reversed because there was no direct evidence linking him to the murder and the circumstantial evidence is insufficient and equally consistent with innocence.
>
> **Proposition of Law No. II:** Appellant's conviction must be reversed because the jury was clearly prejudiced by evidence of alleged other bad acts, such to deprive Appellant of due process and a fair trial.

On November 2, 2006 the state supreme court denied petitioner leave to appeal and dismissed the

4

appeal as not involving any substantial constitutional question. Petitioner did not appeal this decision to the United States Supreme Court.

On May 7, 2007 the petitioner filed the instant petition, in which he raises the following two claims for relief:

> **A. GROUND ONE:** The Court's failure to rule on an objection made during trial by defendant prevented a fair trial.
>
> **B. GROUND TWO:** The verdict was contrary to law and against the manifest weight of the evidence.

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date. Lindh v. Murphy, 521 U.S. 320 (1997).[1]

The role of a federal district court in habeas corpus is set forth in Title 28 U.S.C. § 2254 (d) which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has held that the clauses "contrary to" and "unreasonable

---

[1] There are no issues of untimeliness in this case.

application of" as found in §2254(d)(1) have independent meanings.  Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).  A state court adjudication is deemed as being "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]."  A state court adjudication is deemed as involving an "unreasonable application of clearly established Federal law, as determined by the Supreme Court...as of the time of the relevant state-court decision;" "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply."  120 S.Ct. at 1519-1520.   In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's application of clearly established federal law was objectively unreasonable."  Id. at 1521.

The Sixth Circuit Court of Appeals has interpreted the foregoing as holding that even if a federal habeas corpus court determines that a state court incorrectly applied federal law it may not grant relief in habeas corpus unless it finds that the state court ruling was also unreasonable. Simpson v. Jones, 238 F.3d 399, 405 (6th Cir. 2000), citing Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000), cert. denied, 121 S.Ct. 808 (2001).

Petitioner alleges the following facts in support of his challenge to the trial court's evidentiary rulings found in the first claim for relief:

> Petitioner was convicted on the basis of allegation, insinuation and "belief" of others, thus constituting plain and reversible error in

6

which was never proven beyond a reasonable doubt. Both the trial court and the Court of Appeals found relevant allegations of other alleged activity such as Appellant burning down a tent where his wife and her girlfriend lived at one time, threw beer bottles at a door, leave threatening notes, and was irate with his wife's divorce attorney.

All of these alleged acts of petitioner Brown were alleged to have occurred at unknown times, but before 2001 when his wife moved back into his home. A puddle in the driveway which petitioner claimed was transmission fluid was presumed to be blood (although no evidence was produced to confirm that presumption), petitioner cleaned his car and sold it, he threw away an extra spare tire cover which was recovered in the same woods that the body of the decent [sic] was found; however, he also worked daily in that same area and there was a trash pile for the burning there; and no gun was found, but his son claimed that he believed the gun had been cut into pieces by petitioner and thrown out of the window.

\* \* \* \* \*

The "overwhelming evidence" referred to by the Court of Appeals, however, is evidence of alleged "other bad acts" which have no relevance to the murder charge against petitioner and which should not have been admitted at trial.

\* \* \* \* \*

Due process guarantees prohibit conviction of a defendant by evidence of "other bad acts."

\* \* \* \* \*

In the case at bar, the evidence admitted by the trial court and presented throughout the trial is particularly offensive inasmuch as the majority of the trial was comprised of evidence of which clearly unfairly inflamed the jury.

The common law with respect to evidence of other acts of wrongdoing is codified in Rules of evidence and the Ohio Revised Code. The standard for admissibility under these provisions is strict, with admissibility construed against the state.

Likewise, the trial court herein below improperly allowed the

7

>prosecution to present character and hearsay evidence to portray the defendant as a violent person who terrorized his wife in direct violation of the Rules of Evidence, which states the general principle that evidence of a person's character is "not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion..." This is also particularly egregious in the case at bar, since the petitioner was not accused of violence towards his wife.

Respondent asserts that this claim has been procedurally defaulted in light of petitioner's failure to present it on appeal to the state supreme court.  In addition, respondent argues that although in his appeal to the Ohio Fifth District Court of Appeals petitioner challenged the trial court's failure to rule on his objection to the "other bad acts" testimony of his son Edward's girlfriend, Ms. Michelle Davis, who stated that petitioner had made sexual comments to her, which failure the appellate court held was erroneous but found that it did not prejudice petitioner in light of the "overwhelming evidence" against him, on appeal to the Ohio Supreme Court he challenged the trial court's admission into evidence of testimony of "other bad acts" which included the allegations that petitioner had set fire to a tent where petitioner's wife and the victim were living, that petitioner had thrown beer bottles and penned threatening notes, and that petitioner had lost his temper with his wife's divorce attorney.

The exhaustion doctrine requires that before filing a petition in federal habeas corpus a defendant must utilize all available state remedies, through a motion or petition for review by the state's highest court, by which he/she may seek relief based upon an alleged violation of constitutional rights.  Granberry v. Greer, 481 U.S. 129, 133 (1987).  Under the exhaustion doctrine a petitioner must "fairly present" each federal constitutional claim to the state courts before seeking relief in federal court.  Baldwin v. Reese, 541 U.S. 27 (2004);  Hannah v. Conley, 49 F.3d 1193, 1196 (6th Cir. 1995).  In so doing, state courts are afforded "one full opportunity to

8

resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Fair presentation of the factual and legal basis for a federal constitutional issue to the state's courts may be made in four ways:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), citing Franklin v. Rose, 811 F.3d 322, 326 (6th Cir. 1987), cert. denied, 532 U.S. 958 (2001). Accord, Whiting v. Burt, 395 F.3d 602, 613 (6th Cir. 2005); Blackmon v. Booker, 394 F.3d 399, 400 (6th Cir. 2004). It is not enough to present the facts giving rise to the federal claim raised in habeas corpus; a petitioner must present the same legal theory to the state courts as is presented to the federal courts in order to preserve the claim. Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998). Even if a claim is related, but distinct, the claim is nonetheless defaulted. Lott v. Coyle, 261 F.3d 594, 607, 619 (6th Cir. 2001).

In addition, merely "mak[ing] a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court[,]" does not sufficiently apprise the state court of a specific federal constitutional guarantee so as to exhaust the claim. Gray v. Netherland, 518 U.S. 152, 162-63 (1996), citing Picard v. Connor, 404 U.S. 270, 271 (1971) and Anderson v. Harless, 459 U.S. 4, 7 (1982). For example, use of the term "ineffective assistance" also fails to alert the state courts of the federal nature of a claim. Baldwin v. Reese, supra.

Where a petitioner has failed to fairly present the factual and legal basis for a federal constitutional issue and where petitioner would be barred from pursuing relief on that claim in the

9

state courts, the petition should not be dismissed for failure of exhaustion in light of the fact that there would be no available state remedies to exhaust. Hannah v. Conley, supra at 1195-96; Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994). Under a longstanding Ohio procedural rule, a claim which could have been but was not raised on direct appeal would be barred from being raised in a delayed appeal or in a petition for post-conviction relief. See, Collins v. Perini, 594 F.2d 592, 593 (6th Cir. 1978). However, the petitioner must then demonstrate cause for failure to fairly present the claims to the state courts and actual prejudice to petitioner's defense at trial or on appeal. Gray v. Netherland, supra at 162; Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Deitz v. Money, 391 F.3d 804, 808 (6th Cir. 2004).

In his response to the return of writ in these proceedings, petitioner concedes that although he raised in his appeals to the Ohio Fifth District Court of Appeals and the Ohio Supreme Court the same challenge to the admission of other acts evidence at trial, he relied on additional facts in support of that claim in his arguments to the supreme court. Petitioner argues that the additional facts did not change the legal theory relied on, but only clarified the issue before the supreme court.

To the extent that the respondent argues that the petitioner failed to present the instant claim on appeal to the state supreme court, this Court disagrees and finds that petitioner clearly articulated this claim for relief in the second proposition of law to the state supreme court.

That having been said, the facts supporting that proposition of law differed from those relied on in support of the parallel assignment of error in the lower appellate court, which causes the claims to be related but distinct under the authorities cited previously herein. It follows that the claim has been procedurally defaulted. Petitioner would be unable to pursue relief on that

claim in the state courts in light of the fact that he could have raised it on direct appeal, but did not, which causes it to be barred by the doctrine of res judicata. State v. Perry, 10 Ohio St.2d 175 (1967).  In turn, in light of the fact that the claim could have been but was not raised on direct appeal, petitioner would be barred from raising it in a delayed appeal or in a petition for post-conviction relief. Petitioner having failed to demonstrate cause or prejudice for the procedural default, or evidence of a miscarriage of justice, this claim for relief is procedurally defaulted and subject to dismissal.

Procedural default aside, this claim for relief also fails upon merits review.

To be entitled to relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution. Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994).  As a general rule, an error in the admissibility of evidence does not constitute such a denial, as such errors are matters of state law not cognizable in habeas corpus. Byrd v. Collins, 209 F.3d 486, 528 (6th Cir. 2000), cert. denied, 531 U.S. 1082 (2001). Stated differently, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." Roe v. Baker, 316 F.3d 557, 567 (6th Cir.  2002).  Under the AEDPA the states have wide latitude in ruling on evidentiary matters. Seymour v. Walker, 224 F.3d 542 (6th Cir. 2000), cert. denied, 532 U.S. 989 (2001).  In considering petitioner's habeas corpus petition, a federal court may not grant such petition merely because it disagrees with the evidentiary rulings of the state courts, but may only grant relief if the state court's evidentiary rulings were contrary to rulings of the United State Supreme Court on a similar question of law or if the state courts decided the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts. Sanders v. Freeman, 221 F.3d 846 (6th Cir. 2000).

In the present case the state appellate court agreed with petitioner that the trial court failed to rule on the defense objection to the "other bad acts" testimony of Ms. Davis, but found that such error failed to prejudice petitioner in light of the "overwhelming evidence of [his] guilt," holding in pertinent part:

> In his first assignment of error, appellant maintains the trial court's failure to rule on appellant's objection to the testimony of Michelle Davis, Edward Brown's girlfriend, deprived him of a fair trial.
>
> The admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Nolling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88. Further, a reviewing court shall not disturb evidentiary decisions in the absence of an abuse of discretion resulting in material prejudice. Id. The Ohio Supreme Court has repeatedly held the term abuse of discretion implies the trial court's attitude is unreasonable, arbitrary, or unconscionable, see, e.g., *State v. Adams* (1980), 62 Ohio St.2d 151, 404 N.E.2d 144.
>
> Evid.R. 404 governs the admission of "bad acts" evidence:
>
> "(B) Other crimes, wrongs or acts
>
> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
>
> At trial, Davis testified appellant made sexual comments to her. Appellant's trial counsel objected. During a side bar, trial counsel argued the testimony was inadmissible under Evid. R. 404(B). The trial court agreed the testimony was prejudicial and inquired of the State as to the probative value thereof. The State argued its position, but ultimately agreed not to ask any additional questions on the subject. Upon conclusion of the side bar, the trial court instructed the State to move onto the next subject. The trial court never noted its ruling on the objection to the jury nor provided the jury with limiting or curative instructions. Although we find the trial court erred in its failure to rule on the objection, given the overwhelming evidence of appellant's guilt, we find such error did

not prejudice appellant.

The foregoing ruling of the state appellate court is premised entirely on application of state law, as well as on factual determinations entitled to a presumption of correctness which can only be rebutted by clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998); McQueen v. Scroggy, 99 F.3d 1302, 1310 (6th Cir. 1996). Nothing in those rulings was contrary to rulings of the United States Supreme Court on a similar question of law, nor did the state courts decide the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts. Consequently, there is nothing in that ruling which would lead this Court to find that there has been an infringement of a right guaranteed by the United States Constitution. Petitioner's first claim for relief is therefore without merit.

In petitioner's second claim for relief he argues that his conviction "was contrary to law and against the manifest weight of the evidence."

As was stated previously herein, in order to be granted relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution. Clemmons v. Sowders, supra at 357. A violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution. See, Floyd v. Alexander, 148 F.3d 615, 619 (6th Cir.), cert. denied, 525 U.S. 1025 (1998); Serra v. Michigan Dep't of Corrections, 4 F.3d 1348, 1354 (6th Cir. 1993), cert. denied, 510 U.S. 1201 (1994). It is the obligation of this Court to accept as valid a state court's interpretation of the statutes and rules of practice of that state. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Accord, Duffel v. Dutton, 785 F.2d 131, 133 (6th Cir. 1986).

A claim that a conviction was against the manifest weight of the evidence presents a

question of state law and dos not raise a question of violation of a federal constitutional right.

Tibbs v. Florida, 457 U.S. 31, 47 (1982); Johnson v. Havener, 534 F.2d 1232, 1234 (6th Cir. 1976).

The state appellate court addressed this purely as a matter of state law and held:

> In his second assignment of error, appellant raises a manifest weight of the evidence claim.
>
> On review for manifest weight of the evidence, a reviewing court is to examine the entire record, weight the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.
>
> Appellant asserts the evidence presented by the State could be labeled, at best, suspect. Brief of Appellant at 15. Appellant submits by concluding he murdered Singleton based upon the State's evidence, the jury took a leap beyond reason. Appellant points to the testimony of his son, Larry brown, Jr., who testified his father told him he had done something stupid, and had asked his son if he smelled anything when they were at the Stewart Road property. Appellant also refers to the testimony of Brown, Jr. and Edward regarding a puddle in appellant's driveway which the sons believed to be blood despite appellant's statement the liquid was transmission fluid.
>
> Witness after witness testified appellant had a motive to kill Singleton because she was romantically involved with his wife. The testimony also indicated appellant was initially not bothered by the relationship of the two women because he was also sexually involved with them. However, once Singleton and Angie kicked appellant out of the bedroom, appellant's attitude toward Singleton

> became threatening and hostile.
>
> The State presented numerous witnesses who observed appellant threatening Singleton and Angie during the period after the women moved out of appellant's home. Family friend, Larry Ferguson, testified Angie called him from appellant's residence to come and speak with appellant. When Ferguson arrived, appellant was begging Angie to stay, but she refused to do so. Ferguson told appellant he was going to take Angie home, which caused appellant to jump up, run into the kitchen, and break a chair over the table. Ferguson described the rage in appellant's face. Attorney Flippen, the attorney Angie hired to file her divorce, testified appellant appeared in his office and proceeded to curse him for representing his wife. Appellant refused to leave the office until Attorney Flippen threatened to call the police.
>
> Based upon the evidence set forth in the Statement of the Case and Facts, supra, and the entire record in this matter, we find appellant's conviction was not against the manifest weight of the evidence.

These allegations of violation of state law fail to rise to the level of a denial of fundamental fairness and, therefore, are not cognizable in federal habeas corpus. However, even if they were to be considered, this Court would not find that the decision of the state appellate court on the foregoing matters of state law was either objectively unreasonable or that it involved an unreasonable application of federal law. Consequently, petitioner's second claim for relief must fail.

In light of the foregoing, it is recommended that the petition be dismissed without further proceedings.

> s/DAVID S. PERELMAN
> United States Magistrate Judge

DATE:   September 8, 2008

## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).